NICHOLAS A. BROWN (SBN 198210)
brownn@gtlaw.com
**GREENBERG TRAURIG, LLP**
4 Embarcadero Center, Suite 3000
San Francisco, CA 94111-5983
Telephone: 415.655.1271
Facsimile: 415.520.5609

Attorneys for Plaintiff MoviePass Inc.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOVIEPASS INC., a Delaware corporation, | Case No.: 2:18-cv-01517 |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| SINEMIA INC., a Delaware corporation, | DEMAND FOR JURY TRIAL |
| Defendant. | |

# COMPLAINT

Plaintiff MoviePass Inc. ("MoviePass") brings this Complaint for patent infringement against Defendant Sinemia Inc. ("Sinemia") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the United States, including 35 U.S.C. §§ 271 and 281-285.

2. This lawsuit pertains to the Defendant's infringement of U.S. Patent Number 8,484,133 (the "'133 Patent"), entitled "Secure targeted personal buying/selling method and system" and U.S. Patent Number 8,612,325 (the "'325 Patent"), entitled "Automatic authentication and funding method" (collectively, "The MoviePass Patents"). The '133 Patent is attached as Exhibit 1. The '325 Patent is attached as Exhibit 2.

## PARTIES

3. Plaintiff MoviePass is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business located at 175 Varick Street, New York, New York 10014.

4. Upon information and belief, Defendant Sinemia is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business at 925 N La Brea Ave, Los Angeles, California 90038.

5. Upon information and belief, Sinemia is a business that provides a movie subscription service, where in exchange for a monthly fee, subscribers are able to see a certain number of movies per month.

## JURISDICTION AND VENUE

6. This action arises under the Patent Laws of the United States, 35 U.S.C. § 101 *et seq.*, including 35 U.S.C. § 271. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has general personal jurisdiction over Sinemia because Sinemia has continuous and systematic contacts with this judicial district and

maintains its principal place of business in this judicial district at 925 N La Brea Ave, Los Angeles, California 90038. Sinemia, by conducting business within California, has purposefully availed itself of the benefits and protections of California's laws such that it should reasonably anticipate being haled into court here.

8. Venue is proper in the Central District of California pursuant to 28 U.S.C. §§ 1391 and §1400(b). Defendant Sinemia resides in this district.

## FACTUAL BACKGROUND

9. Plaintiff MoviePass is a technology company dedicated to enhancing the exploration of cinema. As the nation's premier movie-theater subscription service, MoviePass provides film enthusiasts the ability to attend unlimited movies. The MoviePass service, now accepted at more than 91% of theaters across the United States, is the nation's largest theater network.

10. The MoviePass service has more than 1.5 million paying subscribers. MoviePass's fast subscriber growth—from ~12,000 to over 1.5 million subscribers in less than five months—shows that MoviePass is giving consumers a reason to go back to the movie theaters.

11. MoviePass is the owner of all rights, title and interest in the MoviePass Patents, which describe the technology it has developed.

12. The '133 Patent was duly and legally issued on July 9, 2013 after being examined by the United States Patent Office.

13. The '325 Patent was duly and legally issued on September 15, 2015, after being examined by the United States Patent Office.

14. All maintenance fees have been paid for each MoviePass Patent.

15. The MoviePass Patents are embodied in the MoviePass service. For $9.95 per month, MoviePass subscribers can see one standard 2D movie every calendar day, with no "blackout" dates. MoviePass subscribers are issued a MoviePass card, which functions like a credit/debit card. The subscriber activates the card by associating it with the subscriber's MoviePass account through the MoviePass

app or website. To use the MoviePass service, the subscriber logs into the subscriber's account using the MoviePass app on the subscriber's mobile phone. The subscriber then chooses a movie, a movie theater, and a showtime. After arriving at the theatre, the subscriber uses the MoviePass app to check in at the theater, and then uses the MoviePass card to pay for the movie ticket. The MoviePass service determines whether the subscriber satisfies the rules of one movie per day, and one viewing of each movie. If the subscriber satisfies the rules, then when the subscriber checks in at the theater, the MoviePass service verifies that the subscriber's phone is within a prescribed distance of the theater. If it is, the MoviePass service then ensures that there is sufficient amount of credit on the subscriber's payment card to pay for the desired movie ticket. The patented MoviePass system thereby ensures that the rules are satisfied, and that the subscriber's mobile phone is actually present at the movie theater, before loading value onto the subscriber's MoviePass card.

16. The patented MoviePass system allows MoviePass to add value across the movie industry ecosystem by enabling the MoviePass subscription service, which benefits its subscribers, theaters, and studios.

17. The MoviePass service benefits its subscribers because it allows them to see numerous movies every month for a low fixed subscription price, thereby saving its subscribers significant amounts of money. As a result, MoviePass subscribers get to see movies that they wouldn't have seen otherwise. In one survey conducted over Labor Day weekend in 2017, 75% of subscribers said they would not have seen a movie if they had not been MoviePass subscribers.

18. The MoviePass service benefits theaters because it increases the number of consumers who attend movies at movie theaters, including at off-peak showtimes. A study conducted in two test markets using pre-MoviePass data, and data for the first year after having MoviePass, shows that MoviePass drove a 100% and 12% lift in attendance in each of the test markets. Increase attendance benefits theaters, for example by driving up concession sales.

19. The MoviePass service benefits studios by increasing attendance at movies, increasing box-office revenue, increasing consumer interest in movies, and broadening audiences for movies.

20. The MoviePass service also benefits theaters and studios by providing marketing opportunities to MoviePass subscribers.

21. The MoviePass service has received extensive recognition for its innovative subscription service. For example, on August 16, 2017, USA Today stated "MoviePass seems too good to be true." (Exhibit 5.) On August 16, 2017, Wired Magazine published an article titled "MoviePass Wants To Save Moviegoing—If Theaters Will Let It." (Exhibit 6.) On December 27, 2017, the New York Times published an article titled "MoviePass Adds a Million Subscribers, Even if Theaters Aren't Sold On It." (Exhibit 7.) On January 9, 2017 Variety published an article titled "MoviePass Hits 1.5 Million Subscribers." (Exhibit 8.) On February 8, 2017 Variety published an article titled "MoviePass Tops 2 Million Mark in Subscribers." (Exhibit 9.)

22. MoviePass's product has been commercially successful, shown by its rapid subscriber growth. MoviePass reached 1 million subscribers faster than companies such as Netflix, Hulu, and Spotify. App rankings for iOS show that MoviePass has passed Fandango to become the leading movie theater subscription service.

23. Sinemia offers a movie theater subscription service that is remarkably similar to the MoviePass service. Sinemia offers several differently priced subscription plans with different rules, including for example a subscription plan of $10.99 per month for 2 movie tickets per month, and a subscription plan of $15.99 for 3 movie tickets per month. Sinemia subscribers are issued a Sinemia card, which functions like a credit/debit card. The subscriber activates the card by associating it with the subscriber's Sinemia account through the Sinemia app or website. To use the Sinemia service, the subscriber logs into the account using the Sinemia app on the

subscriber's mobile phone. The subscriber then choose a movie, a movie theater, and a showtime. After arriving at the theatre, the subscriber uses the Sinemia app to check in at the theater, and then uses the Sinemia card to pay for the movie ticket. The Sinemia service determines whether the subscriber satisfies its rules for the subscriber's subscription plan, *e.g.* whether the subscriber has reached the limit on the number of movies per month. If the subscriber satisfies the rules, then when the subscriber checks in at the theater, the Sinemia service verifies that the subscriber's phone is within a prescribed distance of the theater. If it is, the Sinemia service then ensures that there is sufficient amount of credit on the subscriber's payment card to pay for the desired movie ticket. The Sinemia system thereby ensures that its rules are satisfied, and that the subscriber's mobile phone is actually present at the movie theater, before loading value onto the subscriber's Sinemia card.

24. Sinemia's Premium movie subscription product infringes at least one claim of each of the MoviePass Patents, as set forth in the claim charts attached as Exhibits 3 and 4.

25. MoviePass has been harmed as a direct and proximate result of Sinemia's infringement of the MoviePass Patents. Sinemia's infringement has harmed MoviePass's existing customer relationships, has harmed MoviePass's ability to obtain new customers and form new customer relationships, and has harmed MoviePass's standing in the movie-subscription marketplace.

**FIRST CLAIM – INFRINGEMENT OF THE '133 PATENT**

26. MoviePass restates and realleges each of the assertions set forth in Paragraphs 1 through 43 above.

27. Sinemia's manufacture, use, offer for sale, and sale of its Premium product infringes at least one claim of the '133 Patent, directly and/or indirectly, under 35 U.S.C. § 271, as set forth in the claim chart attached as Exhibit 3.

28. MoviePass is entitled to recover from Sinemia the damages sustained by MoviePass as a result of Sinemia's infringement of the '133 Patent, including its lost

profits, in an amount subject to proof at trial and not less than a reasonable royalty, together with prejudgment interest, enhanced damages, attorneys' fees, and costs as fixed by this Court under 35 U.S.C. §§ 284 and 285.

29. The infringement by Sinemia of the '133 Patent will continue to cause MoviePass irreparable injury and damage for which there is no adequate remedy at law unless and until Sinemia is enjoined from infringing said patent.

## SECOND CLAIM – INFRINGEMENT OF THE '325 PATENT

30. MoviePass restates and realleges each of the assertions set forth in Paragraphs 1 through 57 above.

31. Sinemia's manufacture, use, offer for sale, and sale of its Premium product infringes the '378 Patent, directly and/or indirectly, under 35 U.S.C. § 271 , as set forth in the claim chart attached as Exhibit 4.

32. MoviePass is entitled to recover from Sinemia the damages sustained by MoviePass as a result of Sinemia's infringement of the '325 Patent, including its lost profits, in an amount subject to proof at trial and not less than a reasonable royalty, together with prejudgment interest, enhanced damages, attorneys' fees, and costs as fixed by this Court under 35 U.S.C. §§ 284 and 285.

33. The infringement by Sinemia of the '325 Patent will continue to cause MoviePass irreparable injury and damage for which there is no adequate remedy at law unless and until Sinemia is enjoined from infringing said patent.

## PRAYER FOR RELIEF

WHEREFORE, MoviePass respectfully requests that the Court enter judgment in its favor against Sinemia, granting the following relief:

a. A judgment that Sinemia has willfully infringed, contributorily infringed, and/or induced infringement of the '133 and '325 Patents literally and/or under the doctrine of equivalents;

b. An order and judgment pursuant to 35 U.S.C. § 283, permanently enjoining Sinemia and its agents, servants, officers, directors, employees, affiliated

entities, and all persons in active concert or participation with it from further acts of infringement of the '133 and '325 Patents;

  c. A judgment awarding to MoviePass all damages adequate to compensate MoviePass for Sinemia's acts of infringement of the '133 and '325 Patents and in no event less than a reasonable royalty for Sinemia's acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

  d. Actual damages suffered by MoviePass as a result of Sinemia's unlawful conduct, in an amount to be proven at trial, as well as prejudgment interest as authorized by law;

  e. A judgment that this is an exceptional case and an award to MoviePass of its costs and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285; and

  f. A post-verdict and post-judgment accounting for any infringement of the '133 and '325 Patents not otherwise covered by a damages award and the requested injunctive relief;

  g. Attorneys' fees, costs, and expenses as allowed by law;

  h. Such other and further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, MoviePass respectfully requests a trial by jury of any and all issues on which a trial by jury is available under applicable law.

Dated: February 23, 2018   **GREENBERG TRAURIG, LLP**

          By: /s/ Nicholas A. Brown
             Nicholas A. Brown

          Attorneys for Plaintiff MoviePass Inc.