Nathaniel L. Dilger (Bar No. 196203)
Email: ndilger@onellp.com
Peter R. Afrasiabi (Bar No. 193336)
Email: pafrasiabi@onellp.com
**ONE LLP**
4000 MacArthur Blvd.
East Tower, Suite 500
Newport Beach, CA 92660
Telephone:   (949) 502-2870
Facsimile:    (949) 258-5081

Attorneys for Defendant,
Sinemia Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MOVIEPASS INC., a Delaware corporation, Plaintiff, v.,<br><br>Plaintiff,<br><br>v.<br><br>SINEMIA INC., a Delaware corporation, Defendant,<br><br>Defendant. | Case No. 2:18-cv-01517-SJO-PLA<br>Hon. S. James Otero<br><br>**REPLY IN SUPPORT OF DEFENDANT SINEMIA, INC.'S MOTION TO DISMISS**<br><br>Date:           November 26, 2018<br>Time:          10:00 a.m.<br>Courtroom: 10C |

## I.     Introduction.

*Alice* makes clear that the mere introduction of a computer into patent claims directed to an abstract idea cannot forestall a finding of invalidity.  And the Asserted Claims here do nothing more than this: they simply claim the abstract idea of confirming the identity and location of a purchaser and exclude any further inventive concept.  MoviePass contends that its Asserted Patents claim something far more, but in support offers little more than conclusory assertions and faulty comparisons.

Consistent with the legion of Federal Circuit and district courts decisions that have invalidated such simplistic business method patents, the Court should dismiss this action with prejudice pursuant to Rule 12(b)(6).

## II.    The Asserted Patents Do Not Claim Eligible Subject Matter.

As explained in Sinemia's opening papers, the Asserted Claims here simply use generic computing devices to perform the abstract idea of confirming a purchaser's identity/location before funding a purchase request.  MoviePass disputes this conclusion, arguing that its claims instead describe "new mechanisms for implementing subscription services."  Opp. Br. at p. 10.  While MoviePass never identifies these "new mechanisms," it does argue at length that the Asserted Claims are patent eligible because they "improve upon the prior art by allowing consumers with a pre-paid subscription to purchase tickets to events without any special involvement of the operator of the venue."  *Id.*

Even accepting as true that MoviePass "improves" upon the prior art by automatically verifying purchase requests without involvement of the theater operator, this described improvement amounts to nothing more than automating an abstract step long performed manually.  But while this may be an "improvement" on that manual process, such an improvement does **not** thereby qualify for patent protection.  *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2350 (2014) (invalidating claims that "merely automate the abstract idea through the use of a generic, conventional technology."); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (rejecting price-optimization method that "help[s] vendors automatically reach better pricing decisions through

automatic estimation and measurement of actual demand to select prices."); *see also* Opening Br. n. 3 (citing cases).

MoviePass argues that "the patents describe a new and different system for verifying a subscriber's 'identity' that is particularly adapted to allowing a subscriber to purchase a ticket to an event from a wide variety of venues without need for cooperation from the venue operator." Opp. Br. at p. 11.  But MoviePass seems to forget these are **exactly** the same limitations that – as discussed Sinemia's opening brief – MoviePass tried and failed to patent during prosecution of its related patent application, i.e., "automatically detect[ing] the presence of the at least one user device at the determined venue to determine that the subscriber-user is at the venue" and "fund[ing] the account … based on detecting the presence of the at least one user device …."  See Opening Brief, p. 19.  But in view of the Supreme Court *Alice* decision, the patent examiner **rejected** these claims under Sec. 101. Dilger Decl. Ex. D, p. 6.  For the same reason they failed then, these claims fail now.

MoviePass next argues that additional limitations found in the claims are sufficient to prove them non-abstract.  For example, MoviePass argues that certain claims include the additional steps of "determining a venue for an event selected by the user," "requiring the user to check-in at the venue from their mobile phone," "issuing an amount of funds sufficient for the event ticket to the user's account," providing a "payment device" for the user, and "placing funds on the payment device only under 'predefined circumstances,' Opp. Br. at 12.  But these generically described steps are simply more of the same: using computing devices – with no explanation of structure or special function – to perform what has long been performed manually.  Once again, such "inventions" are not patent eligible.

MoviePass also appears to argue that its claims are patent eligible because using a phone to verify a purchaser's identity is somehow "new," i.e., MoviePass claims that no one "would ever accept the location of a phone as proof of identity." Opp. Br. p. 12; *see also* n. 53.  But even assuming that novelty could somehow trump patent eligibility (it cannot), MoviePass is factually wrong.  As discussed in Sinemia's opening papers,

MoviePass is far, far from the first to use a mobile phone as a proxy for identify or to confirm the authenticity of a purchase request.  Opening Br. pp. 15-16; Exs. A, B, E, F.

Pointing to *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016), MoviePass complains that Sinemia has "oversimplified" the claims and – following the analysis in *McRO* – the MoviePass claims should likewise be found patent eligible.  But MoviePass badly misses the mark: neither *McRO* nor its discussion on preemption applies to the claims here at issue.  The invention at issue in *McRO* is indeed ***nothing*** like MoviePass's asserted claims.  In *McRO*, the asserted claims were directed to an improved method for allowing computers to produce "accurate and realistic lip synchronization and facial expressions in animated characters."  These claims – unlike the MoviePass's claims - recited highly specific and unique rules for improving evaluating sub-sequences, generating transition parameters, and applying transition parameters to create a final morph weight set.  After performing initial claim construction and determined that the claims "are limited to rules that evaluate subsequences consisting of multiple sequential phonemes," the Court concluded that "[i]t is the incorporation of these claimed rules, not the use of the computer, that improved the existing technological process."  *Id.*

Unlike *McRO*, the Asserted Claims here – as MoviePass tacitly admits – ***rely*** on the use of a generic computer in cooperation with a mobile phone to improve what has been done and could still be done manually, i.e., to verify that funds are being disbursed to the right person for the right purpose.  At its heart, the purported invention here can be likened to the historic use of the "signet ring," a special ring worn by individuals in positions of power.  Because each ring was unique to its owner and unlikely to be given away, receiving a message marked by that ring would verify to the recipient that it was a legitimate message (and legitimate messenger) dispatched by the owner of the ring.

The Asserted Claims here are instead on all fours with the claims invalidated in *Concaten, Inc. v. AmeriTrak Fleet Solutions*, 131 F. Supp. 3d 1166 (D. Colo. 2015), *aff'd*, 669 Fed. Appx. 571 (Fed. Cir. Oct. 11, 2016).  There, the claims described a method for (a) receiving information about snow vehicle locations, (b) processing the information to

3

**REPLY ISO OF SINEMIA'S MOTION TO DISMISS**

provide a map and instructions for the operator of the vehicle, and (c) providing the information to the operator. *Id*. at 1170.  The court found that these claims covered receiving, processing, and transmitting data, and therefore covered only abstract ideas. *Id*. at 1174.  Though the patent provided instructions for possible events, it did not describe a new method for using the collected data. *Id*.  So too here.  MoviePass's claims simply describe receiving, processing, and transmitting data, e.g., subscriber info, event data, phone location, movies viewed, etc., and thereafter providing "instructions for possible events," e.g., whether to fund a user request.  Identically to *Concaten*, the Asserted Claims "do not, for example, purport to improve the functioning of the computer itself [or] … effect an improvement in any other technology …." *See Alice*, 134 S. Ct. at 2359–60

      MoviePass next points to a 1966 patent covering the well-known ATM as supporting patent eligibility.  But it's indeed incongruous to argue that its own claims should be held patentable because they utilize the same concept found in a 60-year-old patent: a fundamental cornerstone of Sinemia's motion to dismiss is that MoviePass is attempting to patent – under the guise of "computer-implemented" – what has been long accomplished conventionally.  Here MoviePass purported invention simply replaces the long-used PIN with confirmation of a mobile phone's location.  Such a rote substitution is not patentable.

      MoviePass's curious reliance on this 1966 patent likewise confirms a second cornerstone of Sinemia's argument: that the Asserted Claims – which issued prior to the *Alice* decision – would not have issued in the post-*Alice* world.  This same fact likewise casts doubt on the 1966 patent, which might have looked quite different had it been prosecuted in the aftermath of the *Alice* decision.  But more importantly, MoviePass simply ignores that the claims of the ATM patent looks ***nothing*** like the Asserted Claims here.  Unlike MoviePass's Asserted Claims, the claims there do not simply recite variations of "do it with a computer."  Instead, they include significant structural elements describing how the actual ATM device operates, including means for receiving a user's access card, a device for entering a users PIN (e.g., keypad), a system for allowing access to the machine provided the PIN matches with the access card information, and a printer for providing a

Case 2:18-cv-01517-SJO-PLA   Document 38   Filed 11/09/18   Page 6 of 6   Page ID #:584

printed record.  Brown Ex. 4, Claim 1.  None of these structural details appears in the Asserted Claims.  To put it bluntly, MoviePass's reliance here falls flat, badly.

MoviePass concludes its opposition by arguing that any consideration of outside evidence would be "improper" here.  But this argument comes after MoviePass spent pages itself relying on exactly such outside evidence, including old patents and even AMC's annual reports.  Beyond being contradictory of its own behavior, this argument – which does not appear until almost page 22 of MoviePass's brief – is overlength and should be disregarded because it was made in violation of the Court's 20-page limitation on briefs.

Second, it's beyond dispute that the Federal Circuit encourages early resolution of eligibility questions because "[f]ailure to recite statutory subject matter is the sort of basic deficiency, that can, and should, be exposed at the point of minimum expenditure of time and money by the parties and the court." *OIP Technologies, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (2015) (Meyer, J, concurring) (citations and internal quotation marks omitted).  And this early consideration rightly includes reviewing background information on "what was conventional, routine, or well-known at the time of the invention." *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 109 F. Supp. 3d 916, 923 (W.D. Tex. 2015).  Courts indeed "frequently make findings (e.g., general historical observations) when determining legal questions." *Id.*, *citing Cal. Inst. of Tech. v. Hughes Comm'n Inc*., 59 F. Supp.3d 974, 978 n. 6 (C.D. Cal. 2014).  There is nothing improper about considering this evidence here.

### III. CONCLUSION.

Because the Asserted Claims cover merely a mundane application of known technology to accomplish what society has done for eons, they cannot satisfy the requirements of 35 U.S.C. Sec. 101.  The Court should therefore grant Sinemia's motion and dismiss MoviePass's complaint with prejudice.

Dated: November 9, 2018         **ONE LLP**

By: /s/ Nathaniel L. Dilger
Nathaniel L. Dilger
Attorneys for Defendant Sinemia Inc.

5
**REPLY ISO OF SINEMIA'S MOTION TO DISMISS**